IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA — AIKEN DIVISION
STEPHANIE JONES,
Plaintiff,
v.
EAGLE TRANSPORT CORPORATION,
(1444 Edgefield Road, North Augusta, SC 29841)
Defendant.
Civil Action No.: 1:26-cv-3975-MGL-MGB
(To be assigned by Clerk of Court)

RCVD - USDC CDLA SC
SEP 9 '26 PM3:15

COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND RETALIATION
(Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)

I. JURISDICTION AND VENUE

This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for unlawful employment discrimination based on race and sex, and for unlawful retaliation for engaging in protected activity.

Venue is proper in the District of South Carolina (Aiken Division) pursuant to 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practices were committed within this judicial district at Defendant's facility located at 1444 Edgefield Road, North Augusta, SC 29841.

Administrative remedies have been exhausted. Plaintiff received a Notice of Right to Sue from the South Carolina Human Affairs Commission (SCHAC # 4-25-137R, S, RET / EEOC # 14C-2025-01113) issued on June 10, 2026. This action is timely filed within the statutory period following postal delivery across state lines.

II. PARTIES

Plaintiff, Stephanie Jones, is an adult Black female residing in Grovetown, Georgia, and was at all relevant times employed by Defendant as a Commercial Driver's License (CDL) driver.

Defendant, Eagle Transport Corporation, is a commercial freight carrier operating a terminal in North Augusta, South Carolina, and is an "employer" within the meaning of Title VII.

III. STATEMENT OF FACTS

A. Employment and Administrative Misconduct (May 2025)

6. Plaintiff began employment as a CDL driver for Defendant on May 5, 2025.
7. On May 13, 2025, Defendant improperly cited Plaintiff for an Electronic Logging Device (ELD) error.
8. Because Plaintiff was actively in training and had not been issued individual terminal loading rack credentials, assigned white male trainer Cody Brown took physical control of the ELD hardware and logged himself in to facilitate rack access.
9. During a subsequent roadside inspection, Mr. Brown explicitly admitted to an inspecting Department of Transportation (DOT) officer that he logged into the unit. The inspecting DOT officer documented Mr. Brown's admission on the official inspection report (Exhibit A).
10. Despite Mr. Brown's admitted logging violation, Defendant subjected Mr. Brown to no suspension, demotion, or loss of trainer privileges. Defendant selectively attributed the violation solely to Plaintiff as part of a fabricated disciplinary paper trail.
11. Defendant's internal training records continuously misrepresent Robert Certain as Plaintiff's primary trainer, whereas Mr. Certain only trained Plaintiff for two days while Mr. Brown was on vacation. Furthermore, training evaluation forms submitted by Defendant contain unauthorized and forged signatures attributed to Plaintiff.

B. Coercion in Hazardous Weather & Secret Write-Ups (June 2025)

12. On June 7, 2025, during severe, hazardous weather involving heavy rain, high winds, and fallen tree limbs, Plaintiff expressed safety concerns regarding night driving visibility.
13. Terminal Manager Joe Killough and dispatch unlawfully coerced Plaintiff, stating "trucking ain't for everyone" and threatening termination if Plaintiff did not take the load. Plaintiff completed the assignment under threat of job loss.
14. Defendant subsequently generated a secret disciplinary write-up claiming Plaintiff "refused loads" and falsely noted that Plaintiff "refused to sign," despite Plaintiff operating in accordance with FMCSA safety protocols (49 CFR § 392.14) and completing the deliveries once weather conditions improved.
15. On June 9, 2025, a product blend occurred solely because terminal dispatch instructed Plaintiff to abort loading midway on her first day operating alone. Defendant's internal investigation report officially classified this incident as "Non-Preventable" (Exhibit C), yet Defendant later presented it as a disciplinary infraction.

C. HR Notice and Retaliatory Hostility

16. Prior to termination, Plaintiff engaged in protected activity by submitting written complaints and text messages to Vice President of Human Resources Rena Cater reporting dispatcher hostility, wage discrepancies, and improper operational practices—including modifying Bills of Lading to deliver off-spec fuel.
17. Ms. Cater acknowledged receiving these complaints but deferred resolution to District Management, who failed to contact or assist Plaintiff.
18. White dispatcher Toni Strickland actively monitored Plaintiff's in-cab communications while Plaintiff was driving, creating a hostile and retaliatory working environment.

D. Pretextual Discharge & Disparate Treatment (August 2025)

19. On August 14, 2025, Plaintiff completed her delivery shift at 11:45 AM after performing required bucket drains on Compartments 2 and 3, where an airflow/vacuum lock prevented fuel discharge. Plaintiff submitted all paperwork directly to dispatcher Toni Strickland at 11:45 AM.
20. After 3:00 PM, male driver Jordan Bradshaw operated the vehicle without performing a mandatory FMCSA pre-trip

inspection. Had Mr. Bradshaw performed a required pre-trip inspection, sight glass check, or compartment tap, he would have identified the compartment status before moving or operating the rig.

21. Defendant terminated Plaintiff on August 15, 2025, holding her strictly liable for an off-duty equipment anomaly while subjecting the male driver to no discipline for a direct safety inspection failure, demonstrating sex-based disparate treatment.

22. Defendant embellishes the severity of the event in administrative filings, claiming "bodily harm," which contradicts contemporaneous internal reports that classified the event strictly as a product spill during bucket draining.

23. Following termination, Plaintiff was awarded full state unemployment benefits after an administrative tribunal determined that Plaintiff committed no policy misconduct and operated in accordance with her training (Exhibit B).

IV. CLAIMS FOR RELIEF

COUNT I: Title VII Race & Sex Discrimination (42 U.S.C. § 2000e-2)

Defendant subjected Plaintiff to disparate treatment, selective enforcement of safety policies, and termination based on race and sex while exempting white male supervisory staff and male drivers from equivalent discipline.

COUNT II: Title VII Retaliation (42 U.S.C. § 2000e-3)

Defendant subjected Plaintiff to heightened scrutiny, fabricated disciplinary write-ups, and pretextual termination in retaliation for engaging in protected opposition to discriminatory treatment, payroll issues, and unlawful dispatch practices.

V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and grant the following relief:

Issue a declaratory judgment stating that Defendant's actions violated Title VII of the Civil Rights Act of 1964;

Back Pay & Lost Benefits: Award Plaintiff full back pay, including unpaid wages, lost overtime, differential pay, lost bonuses, and accrued benefits from the date of wrongful termination (August 15, 2025) through the date of judgment;

Front Pay & Wage Differential: Award Plaintiff front pay to compensate for future loss of earnings and the ongoing wage differential resulting from being forced into lower-paying employment despite diligent, continuous job search efforts;

Compensatory Damages: Award compensatory damages for emotional distress, mental anguish, loss of reputation, and financial hardship caused by Defendant's unlawful conduct;

Punitive Damages: Award punitive damages for Defendant's intentional, willful, malicious, and bad-faith conduct; and

Grant such other legal, equitable, or injunctive relief as the Court deems just and proper.

Respectfully submitted,

Stephanie Jones, Plaintiff Pro Se
3346 Grove Landing Circle
Grovetown, GA 30813
Telephone: (706) 533-0634

Dated: September 9, 2026